IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 1:18-cv-02967-RM

ROBERT ALAN MCTAGUE,

    Plaintiff,

v.

ANDREW SAUL, Acting Commissioner of Social Security,[1]

    Defendant.

## ORDER

    This matter is before the Court on Plaintiff Robert Alan McTague's ("McTague") request for judicial review pursuant to 42 U.S.C. § 450(g). (ECF No. 1.) McTague challenges the final decision of Defendant Andrew Saul, Acting Commissioner of the Social Security Administration ("Commissioner" or "Defendant"), by which he denied McTague's application for disability insurance benefits under Title II of the Social Security Act ("Act"). The Administrative Law Judge ("ALJ") ruled McTague was not disabled within the meaning of the Act before the date of last insured and was therefore not entitled to disability insurance benefits.

    Defendant provided the Court with the administrative record. (ECF No. 11.) The parties have fully briefed the matter and it is ripe for adjudication. (ECF Nos. 14, 15, 18.)

    For the reasons set forth below, the Court AFFIRMS the ALJ's denial of McTague's application for disability insurance benefits.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is substituted for Nancy A. Berryhill after he became the Acting Commissioner of Social Security on June 17, 2019.

I.      BACKGROUND

Before October 2012, McTague was a fire protection sprinkler fitter. (Admin. R. ("Tr.") 177–78.) In December 2015, McTague applied for disability insurance benefits under Title II of the Act alleging several disabling conditions related to: (1) a right shoulder replacement; (2) a right torn medial collateral tendon; (3) left shoulder surgery; and (4) diabetes. (Admin. R. ("Tr.") 154–55, 171–201.) He alleged he became disabled on April 13, 2014 after he felt a "pop" in his right shoulder after reaching for an object at a convenience store. (Tr. 47, 71, 154, 335, 341.) His date of last insured was identified as December 31, 2015. (Tr. 49.) At the time of his date of last insured, McTague was forty-eight years old. (Tr. 57.)

McTague's application was denied (Tr. 87–92), and he requested a hearing before an ALJ. (Tr. 98–99.) After conducting a hearing on October 5, 2017, the ALJ affirmed the denial because she, in reliance on testimony from vocational expert Ashley Bryars ("VE"), determined that as of the date of last insured McTague could perform light work and "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (Tr. 44–58, 62–86.) McTague requested review of the ALJ's decision (Tr. 153), but the Appeals Council ("Council") denied such review, making the denial the final opinion of the Commissioner. (Tr. 1–6.)

McTague timely requested judicial review before the Court.

McTague challenges the ALJ's findings primarily on the basis that she failed to adequately address the combination of his impairments and their effects on his other conditions in Step Two of the sequential analysis, which consequently rendered all following steps erroneous. (ECF No. 20, at 5, 7, 8, 18–19 (citing Tr. 50, 55, 184).)

    A.    **Relevant Medical Records**

The medical records provided to the ALJ span between April 22, 2014 and August 24, 2017. (Tr. 230–478.) They include records from three providers who treated McTague's right shoulder injury with limited reference to his back condition.[2] They also contain the report of a non-treating orthopedic surgeon Peter Weingarten, M.D., dated August 2, 2017. (Tr. 240–52.) There is no dispute that McTague suffers from the following severe conditions: a large glenohumeral joint effusion with synovitis and debris, moderate degenerative changes of the glenoid, and mild to moderate supraspinatus tendinosis and glenohumeral capsular edema of the right shoulder, glenohumeral osteoarthritis, and degenerative disc disease lumbar spine. (Tr. 49, 237–38, 253–56.)

Notably, the medical records provide little to no references to McTague's obesity or any issues related to either his left shoulder or right knee before the date of last insured. With respect to his left shoulder, what references the Court does see show a predominantly normal surgically repaired condition. (*See, e.g.*, Tr. 345). With respect to his right knee, there is no indication that it affects his gait or strength. (*See* Tr. 419). Dr. Weingarten physically examined McTague and discounted the severity of McTague's complaints as they related to his left shoulder and right knee due, in part, to the lack of medical records provided by McTague and as a result of the physical examination itself. (Tr. 244, 249.) Consequently, Dr. Weingarten identified McTague's disabling conditions as limited to his right shoulder replacement and lumbar spine pain. (Tr. 245–46 ("The right knee symptomatology and the left knee symptomatology although significant are not disabling.")).

---

[2] McTague sought physical therapy from Premier Physical Therapy between June 20, 2017 through August 24, 2017. (Tr. 444–78.) Notably, however, this therapy postdates Plaintiff's date of last insured by about a year and a half.

3

### B.      Hearing Testimony

McTague testified that he suffered two major injuries to both shoulders – left shoulder in 2011 and right shoulder in 2014[3] – (Tr. 70–71), but the ALJ indicated that any additional documents related to McTague's left shoulder injury would not "be all that helpful" given he was working after 2011; McTague's counsel agreed. (Tr. 71.) McTague testified that before he had his first surgery on his right shoulder, he could not wash dishes, wash his hair, and buckle his belt. (Tr. 75.) Before his right shoulder surgery, he rated his pain a ten out of a scale of one to ten, but after extensive surgery his pain has been reduced to a six out of ten. (Tr. 76.) McTague testified that he could lift his left shoulder above his head, but he could not support any weight with his left shoulder. (*Id.*)

With respect to his back pain, McTague testified he had been suffering from this pain for two years and it made it difficult to bend over to ties his shoes and sit or stand for twenty minutes. (Tr. 75.) In 2014, around the time he injured his right shoulder, McTague was unable to walk through the grocery store without having to sit down and wait for the pain to subside. (Tr. 77.) He testified that his back pain had increased in recent years. (Tr. 77–78.)

McTague further testified he could lift only five pounds. (Tr. 79.) He stated he had trouble driving, because he could not sit for more than twenty minutes. (*Id.*) McTague also testified he could use only one arm to pull a shirt over his head and had some difficulty writing because of his shoulder pain. (Tr. 80.)

The ALJ then examined the VE, who testified that McTague would not be able to perform his past work given his restrictions. (Tr. 84– 85.) She did, however, testify that

---

[3] McTague's testimony related to his left shoulder injury is confused in the sense that when the ALJ asked him to clarify the date of the onset of his disability, referencing the week before April 23, 2014, McTague testified that that may have been referencing his left shoulder injury. (Tr. 70.) However, it was clarified that this was in reference to McTague's *right* shoulder injury. (*Id.*)

McTague would work as an usher, a school bus monitor, or a children's attendant given certain restrictions. (Tr. 84 –85.)

### C. The ALJ's Decision

On January 10, 2018, the ALJ issued her decision denying McTague disability insurance benefits. (Tr. 47–58.) In reaching her decision, the ALJ followed the five-step sequential evaluation process for evaluating disability claims. (Tr. 49–58); *see also Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). At step one, the ALJ found McTague had not engaged in substantial gainful activity since his onset date through his date last insured. (Tr. 49)

At step two, ALJ determined McTague suffered from the following severe impairments: (1) large glenohumeral joint effusion with synovitis and debris; (2) moderate degenerative changes of the glenoid; (3) mild to moderate supraspinatus tendinosis, and glenohumeral capsular edema of the right shoulder; (4) glenohumeral osteoarthritis; and (5) degenerative disc disease. (*Id.*)

At step three, the ALJ determined McTague's impairments, considered independently and in combination, did not meet the severity of a listed impairment. (Tr. 50)

At step four, the ALJ determined McTague was unable to perform his past relevant work. (Tr. 56.)

At step five, after determining McTague's residual functional capacity ("RFC") and based on the testimony of the vocational expert, the ALJ found McTague could perform other jobs available in significant numbers in the national economy, specifically, usher; school bus monitor; and children attendant. (Tr. 57–58.) Therefore, ALJ LaRiccia concluded that McTague was not disabled prior to and through December 31, 2015 and denied his application for benefits. (Tr. 58.)

### D. Procedural History

McTague appealed the ALJ's decision at issue in this matter. (Tr. 153.) On September 13, 2018, the Appeals Council denied McTague's request, making the ALJ's denial the final decision of the Commissioner. (Tr. 1–6.) McTague appeals that decision. (ECF No. 1.)

## II. LEGAL STANDARDS

### A. Standard of Review

As stated, the Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled. *Wilson*, 602 F.3d at 1139. The claimant bears the burden of proof at steps one through four; if the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five. *Id*. The Court's review of the Commissioner's decision "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1177–78 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)) (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Id*. (quotation marks and citation omitted). The Court may not reweigh the evidence or substitute its judgment for that of the agency. *Id*.; *see also Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016) (same).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract

from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g). As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* at 479–480 (citations omitted). This duty exists even when the claimant is represented by counsel. *Id.* at 480 (citation omitted).

"The failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted).

### III. DISCUSSION

McTague raises the following issues for the Court's consideration: (1) the ALJ failed to find McTague's obesity was a severe impairment or address its effects in combination with his other impairments, including alleged mental impairments; (2) the ALJ failed to consider all of McTague's medical evidence in the case, which tainted the rest of the disability analysis, including the RFC determination; and (3) the ALJ failed to properly evaluate McTague's subjective complaints. (ECF No. 18.) As a result of the foregoing, McTague argues the VE's testimony was likewise in error as being based on findings that were unsupported by substantial evidence.

### A. Evaluation of Obesity

#### 1. *The ALJ did not find McTague's obesity was a severe impairment*

McTague's first, and primary, challenge to the ALJ's ruling is that the ALJ erred in failing to analyze McTague's obesity in combination with his other impairments, in accordance

with Social Security Rule (SSR) 02-1p,[4] after finding obesity was a severe impairment. (ECF No. 20.) However, the ALJ made no such finding. Specifically, after noting McTague's BMI, the ALJ found McTague's obesity "to be a nonsevere impairment."[5] (Tr. 50.) The ALJ referenced the appropriate standard[6] and concluded McTague's obesity did not equal a listing, meaning his obesity did not act alone or in combination with any other impairment to "significantly limit[] his [] physical or mental ability to do basic work activities." SSR 19-2p.[7] Consequently, the majority of McTague's argument misconstrues the ALJ's findings and is rejected.[8]

> 2. *Any error in analyzing McTague's impairments in combination with his alleged obesity was harmless*

In his Reply, McTague argues that even if the ALJ determined his obesity was non-severe, this finding "did not relieve the ALJ of her duty to evaluate each of the impairments as to their severity." (ECF No. 22, at 2.) More specifically, McTague argues the ALJ failed to appropriately address the alleged exacerbating effects of McTague's non-severe obesity on his other impairments even though he did not raise the issue before the ALJ. First, the ALJ need not engage in such formalistic factor-by-factor recitation of the evidence once she had already found

---

[4] SSR 02-1p was rescinded and replaced by SSR 19-2p (eff. May 20, 201), after the parties completed their briefing; however, even if the Court applied SSR 19-2p the result would be the same.

[5] The ALJ's conclusion is in line with the severity considerations, including the "individualized assessment of the effect of obesity on a person's functioning when deciding whether the impairment is severe," outlined in SSR 19-2p. (*See* Tr. 50) ("[T]here is no evidence indicating that [McTague's] obesity limits his ability to perform work related activities").

[6] "SSR 02-1p requires consideration of obesity in determining whether a claimant has medically determinable impairments that are severe, whether those impairments meet or equal any listing, and finally in determining the residual functional capacity." (Tr. 50.) This is also consistent with SSR 19-2p. ("If the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities, we find that the impairment(s) is severe. . . . Obesity is not a listed impairment; however, the functional limitations caused by the MDI of obesity, alone or in combination with another impairment(s), may medically equal a listing.")

[7] Consistent with SSR 02-1p(6), (7).

[8] The cases cited by McTague in support of why remand is warranted where the ALJ did not address McTague's alleged obesity here are distinguishable. *See DeWitt v. Astrue*, 381 Fed. App'x 782 (10th Cir. 2010) (ALJ found plaintiff's obesity to be a severe impairment and failed to address its effects on plaintiff's other impairments); *Metre v. Colvin*, No. 15-cv-002064-NYW, 2016 WL 52442950, at *6 (D. Colo. Sept. 22, 2016) (ALJ's decision was *completely* silent as to the plaintiff's obesity anywhere at any stage of sequential evaluation).

McTague's obesity was non-severe and noted a lack of supporting record evidence. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (citing *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)) ("common sense, not technical perfection, is our guide"). Second, the ALJ is not required to continuously address McTague's obesity throughout her decision when she conclusively negated McTague's claims of impairment related to his alleged obesity. McTague disputes, however, that the ALJ "conclusively negated" his claims of impairment related to his alleged obesity. (ECF No. 20, at 11) (citing *Williams v. Berryhill*, 682 Fed. App'x 665 (10th Cir. 2017)). The Court finds the ALJ did in fact conclusively negate McTague's claims related to his alleged obesity, and the ALJ need not recite its effect on his other impairments at every step of the sequential analysis. But even if the ALJ had not conclusively negated McTague's impairment claims, any error committed by the ALJ in failing to explicitly reference McTague's obesity throughout the remainder of the sequential analysis was harmless.

At Step Two, the ALJ established McTague had a BMI of 34.5, but that his obesity was non-severe and did not significantly limit his ability to perform basic work activities when considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" under 20 C.F.R. § 404.1529, and SSRs 96-4p and 16-3p. (Tr. 50.)[9]

In Step Three, the ALJ "considered all the claimant's impairments individually and in combination," but found "no evidence that the combined clinical findings from such impairments reach the level of severity contemplated in the Listings." (Tr. 51.) The ALJ's determination at Step Three logically – by way of the disability analysis's sequential nature – includes Step Two

---

[9] To the extent McTague suggests that his obesity might cause his condition to equal a listing (ECF No. 20, at 11–12), there is nothing to support the claim. Listing 1.02A requires an inability to ambulate effectively. Here, the medical records do not support such a finding.

determinations. This is supported by *Williams*'s conclusion that if an issue is conclusively negated, failure to address it at a later step is not fatal. McTague's medical records reveal few references to his weight issues.[10] Indeed, medical records between April 2014 and December 2015 indicate few impairments beyond McTague's right shoulder. (Tr. 52–56, 233–39, 257–365.)

Ultimately, even if an ALJ had an affirmative duty to further consider a claimant's obesity when not asserted by the claimant, as is the case here, the ALJ's failure to consider claimant's obesity in combination with his other impairments is harmless error where claimant does not show that his obesity exacerbated his other impairments. *See Callicoatt v. Astrue*, 296 Fed. App'x 700, 702 (10th Cir. 2008); *Quintana v. Colvin*, No. 12-cv-03263-LTB, 2014 WL 1309696, *10 (D. Colo. Apr. 1, 2014) (same).

Here, like in *Quintana*, McTague did not raise his obesity in his application (Tr. 154–55), during his exam with Dr. Weingarten (Tr. 243–52), or at the hearing before the ALJ (Tr. 62–86). McTague also points to no evidence in the medical record or hearing testimony showing his obesity did in fact exacerbate his other impairments. The record does not contain any assessment of the effects of McTague's obesity on his other impairments, and indeed there is not any significant discussion about his obesity contained within his medical records in general. Consequently, the ALJ had no records which supported impairments tied to McTague's obesity.

At most, the only reference to McTague's weight is March 24, 2015 when he presented to St. Anthony Hospital complaining of ear pain. (Tr. 257–61.) However, McTague does little to suggest how or to what degree his obesity affects his limitations. The ALJ reviewed the record and found no evidence to suggest that McTague's obesity affected his limitations. It is well-

---

[10] It follows intuitively that the impact of McTague's obesity would be minimized if this condition were not addressed by any of his treaters.

established that a court "will not make assumptions about the severity or functional effects of obesity combined with other impairments," and "[w]e will evaluate each case based on the information in the record." *Fagan v. Astrue*, 231 Fed. App'x 835, 838 (10th Cir. 2007). McTague invites this sort of speculation despite the ALJ's conclusion that the record contains no evidence to suggest his obesity affected his limitations; McTague also fails to point to any evidence to the contrary. McTague argues the ALJ failed to cite "specific evidence, to support [her] conclusion that McTague's obesity would not have any impact on his severe back impairment." (ECF No. 20, at 8.) However, it is not the ALJ's burden to prove that evidence does not exist; it is McTague's burden to show that he has impairments severe enough to meet a listing under government regulations. *See Fagan*, 231 Fed. App'x at 838 ("the claimant—upon whom the burden rests at step three—has failed to do more than suggest that the ALJ should have speculated about the impact her obesity may have on her other impairments"). Consequently, McTague fails to show the ALJ's assessment at Steps Two and Three was not harmless error.[11]

### B.  The ALJ Properly Considered McTague's Subjective Complaints When Formulating the RFC

McTague next challenges the weight the ALJ gave to his subjective complaints when formulating her RFC. The ALJ had discounted the value of McTague's subjective complaints because they were inconsistent with the objective medical evidence. (ECF No. 20, at 14–18.) Much of McTague's argument is repetitious of those addressed above (e.g., that the ALJ failed to

---

[11] McTague tangentially references mental impairments of anxiety and depression and argues the ALJ failed to address how McTague's obesity may have affected these mental impairments. (ECF No. 20, at 9.) McTague implicates a serious omission, generally, that is the failure to discuss his mental impairments at large. However, after a review of the record, including the documents specifically cited by McTague (Tr. 184) (McTague cites Tr. 697, but the record stops at Tr. 478 (ECF No. 11-1)), the only support for a claim of mental impairment, comes directly from McTague's Function Report, but is otherwise unsupported. This is insufficient for the purposes of a disability determination. *See Grotendorst v. Astrue*, 370 Fed. App'x 879, 882 (10th Cir. 2010) ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms.")

appreciate McTague's subjective complaints of his alleged combined disabling conditions). Ultimately, credibility determinations are peculiarly the province of the finder of fact, and the Court will not upset such determination if they are supported by substantial evidence. *See Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013). Here, after establishing seven factors she considered in her analysis, the ALJ concluded McTague's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but his "statements concerning the intensity, persistence and limiting effects of these symptoms" were inconsistent with the record evidence. (Tr. 53.) The ALJ relied on the objective medical evidence and inconsistencies in statements made by McTague. (Tr. 56.) The ALJ may consider the lack of objective verification to support McTague's hearing testimony. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1168 (10th Cir. 2012). McTague's testimony and argument that his capabilities were more limited than the ALJ found them to be does not establish that the ALJ's reliance on the objective medical evidence or McTague's own statements in his Function Report was improper. The Court will not reweigh the evidence. *Wall*, 561 F.3d at 1052.

Furthermore, the ALJ clearly discounted McTague's testimony as it relates to how his back, right knee, and left shoulder impairments limited his functional capacity, determining the record evidence was inconsistent with the severity of which McTague complained. For example, between May 5, 2014 and March 24, 2015, McTague's medical records show "[n]o backpain" under his Review of Systems. (Tr. 257, 324.) The first time there is any reference to back pain is on November 29, 2016, almost a year after the date of last insured. (Tr. 253–56.) Similarly, despite a history of surgery on his right knee, McTague's medical records do not show this affected him in any substantial way. *See, e.g.*, (Tr. 345) (April 22, 2014 records indicate McTague had "5/5 mm strength throughout" and normal gait); (Tr. 337) ("Strength and sensation

are normal"); (Tr. 325) (same); (Tr. 258) ("Extremities have full range of motion. . . patient is ambulatory with a normal gait.") The same can be said for Plaintiff's left shoulder. (Tr. 345) ("no ROM deficits noted LUE"); (Tr. 325) ("Extremities are symmetrical, full range of motion"); (Tr. 281) (same). Consequently, McTague has not shown that the ALJ erred by discounting his subjective complaints or that the ALJ's RFC determination was not supported by substantial evidence.

### C. The ALJ's Step Five Analysis Was Supported by Substantial Evidence

Finally, McTague argues "the ALJ's reliance on the VE testimony that is based on the RFC he [sic] ultimately found for McTague fails, since the testimony the ALJ elicited did not precisely relate all of the limitations that [] McTague's combined physical and mental impairments caused." (ECF No. 20, at 18–19.) However, this is nothing more than another crack at the ALJ's RFC determination, which the Court has determined above is supported by substantial evidence. *See Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000) (citing *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000)). Consequently, there was no error in the VE's testimony that McTague could perform work that is available in significant numbers in the national economy.

### IV. CONCLUSION

Based on the foregoing, it is ORDERED:

(1) That the Defendant's denial of disability insurance benefits under the Social Security Act is AFFIRMED;

(2) That McTague's request – for either an award of benefits or remand – is DENIED;

(3)     That JUDGMENT shall enter in favor of Defendant and against McTague, with each party to bear their own fees and costs; and

(4)     That the Clerk shall close the case.

DATED this 5th day of August, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge